IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BROADWAY INDUSTRIES, INC., <br><br> Defendant. | Case No. 1:25-cv-01213 (MSN/WBP) |

**PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

Plaintiffs Board of Trustees of the Sheet Metal Workers' National Pension Fund, International Training Institute for the Sheet Metal and Air Conditioning Industry, Sheet Metal Workers' Occupational Health Institute Trust, and National Energy Management Institute Committee (collectively, "Plaintiffs" or "Funds") request default judgment against Defendant Broadway Industries, Inc. ("Broadway") under Fed. R. Civ. P. 55(b). (ECF No. 9.) Under 28 U.S.C. § 636(b)(1)(C), I recommend that the district judge grant Plaintiffs' motion for default judgment for the reasons stated below.

### I.     Procedural Background

Plaintiffs constitute a collection of employee benefit plans, trust funds, and joint labor-management organizations administered from Falls Church, Virginia. (ECF No. 10 at 2.) Broadway, a California corporation, employs trade workers. (*Id.*)

For some of its business projects, Broadway signed collective bargaining agreements ("CBAs") with Local Union No. 105 that require Broadway to pay benefits to Plaintiffs for covered employees who were members of Local Union No. 105. (*Id.*) When Broadway failed to

make its required payments and refused to allow an audit of its payroll documents, Plaintiffs brought this action to recover known and unknown fringe benefit contributions owed to Plaintiffs under the CBAs. (*Id.* at 3, 4.)

On July 22, 2025, Plaintiffs filed a two-count Complaint against Broadway seeking to recover delinquent contributions, liquidated damages, interest, attorneys' fees, and costs. Plaintiffs brought their claims under Sections 502(a)(3), (d)(1), (g)(2), and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), and 1145, and under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Plaintiffs also ask the Court to enforce Broadway's obligation to provide payroll review records to the Funds under Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the CBAs, and the Trust Document governing the Funds. (ECF No. 1 ¶ 1.)

The Clerk issued a summons for service on Broadway (ECF No. 5), and a process server served Broadway's registered agent on September 4, 2025 (ECF No. 6). Under FED. R. CIV. P. 12(a)(1)(A)(i), Broadway had 21 days after service to file a responsive pleading, making its answer due by September 25, 2025. Because Broadway never answered or otherwise responded to the Complaint, Plaintiffs moved for entry of default against Broadway, which the Clerk entered on October 31, 2025. (ECF No. 8.) That same day, Plaintiffs filed this Motion (ECF No. 9) and a Memorandum in Support (ECF No. 10). The Court held a hearing on Plaintiffs' Motion for Default Judgment on November 21, 2025. (ECF No. 13.) Plaintiffs' counsel appeared, but no one appeared on behalf of Broadway. (*Id.*)

## II.    Factual Background

The Complaint (ECF No. 1), the Motion (ECF No. 9), and Plaintiffs' Memorandum in Support of Default Judgment with accompanying exhibits (ECF No. 10) establish these facts.

Broadway hired union members of the International Association of Sheet Metal, Air, Rail, and Transportation Workers Union, Local Union 105. (*See* ECF No. 10 at 2-4.) The union therefore required Broadway to execute CBAs requiring Broadway to submit monthly remittance reports and fringe benefit contributions to Plaintiffs for Broadway's employees who were Local Union 105 members. (*Id.* at 3, 4; ECF No. 1 at 7.) The CBAs required Broadway to pay these contributions by the twentieth day of the month following the month in which Broadway paid the employees. (ECF No. 10 at 4). The CBAs deemed these payments delinquent if they were not timely made. (*Id.*) When an employer fails to make payments, the CBAs and the Trust Document authorize the Funds to conduct an audit of the employer to ensure the accuracy of remittance reports, contributions, and hours of covered work performed. (*Id.* at 5.) When audits occur, employers must furnish all data, including payroll records, cash disbursement records, and invoices necessary for an auditor "to audit and determine any discrepancy in wages or contributions for which an obligation exists under this or any other Agreement between the Employer and any Local Union of SMWIA," within seven days after the Funds provide written notice. (ECF No. 10 at 12; ECF No. 10-1, Ex. 10.)

### III. Proposed Findings and Recommendations

Having established the procedural background and relevant facts, I turn to whether default judgment is appropriate.

#### A. Jurisdiction and Venue[1]

The Court must establish both subject matter jurisdiction over a claim and personal jurisdiction over a party-in-default before a default judgment may be entered.

---

[1] The Complaint only alleges subject matter jurisdiction and venue (ECF No. 1 ¶ 2, 3), but Plaintiffs allege personal jurisdiction over Broadway in their Memorandum in Support of the Motion for Default Judgment. (ECF No. 10 at 7, 8).

As for subject matter jurisdiction, district courts possess "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, as well as "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies . . . ." 28 U.S.C. § 1337(a). ERISA specifically vests district courts with jurisdiction to grant relief to a participant, beneficiary, fiduciary, or any person of an employee benefit plan. *See* 29 U.S.C. § 1132(e)(1). Because Plaintiffs administer the employee benefit plans at issue from Falls Church, Virginia, this Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1132(e)(1). This Court may also exercise personal jurisdiction over Broadway, as the plan is administered in this district and the statute allows for nationwide service of process. *See* 28 U.S.C. § 1132(e)(1)-(2). Venue is also proper because, as stated, the Funds administer the plans within this district. 28 U.S.C. § 1132(e)(2).

**B.     Service**

Before entering default judgment, a court must determine that the defaulting party was properly served. ERISA allows service in any district where a defendant resides or may be found. 29 U.S.C. § 1132(e)(2). Federal Rule of Civil Procedure 4(h)(1)(B) allows service to be made, among other ways, by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."

The affidavit of service filed with the Clerk shows that a private process server served the summons and Complaint on Broadway's registered agent in California on September 4, 2025. (ECF No. 6.) The process server therefore properly served Broadway with the summons and complaint.

### C. Grounds for Entry of Default

Rule 55 of the Federal Rules of Civil Procedure requires the clerk of court to enter a default upon request when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." As noted above, Broadway's answer was due by September 25, 2025. Broadway has not filed any responsive pleading. On Plaintiffs' request, the Clerk entered default on October 31, 2025. (ECF Nos. 7, 8.) Accordingly, the Clerk properly entered default as to Broadway.

### D. Liability

Because the Clerk has entered default against Broadway, the Complaint's factual allegations are admitted, and the inquiry becomes whether the alleged facts state a claim. *See* FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) and *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

Under Federal Rule of Civil Procedure 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Even so, a court does not automatically consider the amount of damages sought as admitted. *See* FED. R. CIV. P. 8(b)(6). Instead, Federal Rule of Civil Procedure 55(b)(2) allows the court to determine damages, to establish the truth of any allegation by evidence, or to investigate any other matter when necessary to enter or carry out judgment.

Plaintiffs seek unpaid and delinquent contributions owed under the CBAs, as well as liquidated damages, interest, late fees, attorneys' fees and costs, and the production of the documents necessary to conduct a payroll audit. (ECF No. 1 at 2, 8; ECF No. 10 at 7.)

5

Plaintiffs seek default judgment against Broadway for violating ERISA and the LMRA. (ECF No. 1 at 2.) ERISA requires "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement [to] . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

Separate from ERISA, the LMRA permits labor organizations to file federal suits against employers for breaching collective bargaining agreements. *See* 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties[.]"). The LMRA thus serves as a separate vehicle for relief and supplements the relief provided by ERISA. *See Bd. of Trustees, Nat. Stabilization Agreement of Sheet Metal Indus. Tr. Fund v. AKS, LLC*, No. 1:14CV97 (LMB/TRJ), 2014 WL 3749710, at *4 (E.D. Va. July 29, 2014) (citing *Bugher v. Feightner*, 722 F.2d 1356, 1359 (7th Cir. 1983)).

ERISA[2] authorizes the following remedies for suits brought by a labor organization against an employer who fails to make required contributions:

(A) the unpaid contributions;

(B) interest on the unpaid contributions;

(C) an amount equal to the greater of –

    (i) interest on the unpaid contributions, or

---

[2] ERISA was intended to supplement the existing right to bring a suit for breach of a collective bargaining agreement under the LMRA. *See Bd. of Trustees, Nat. Stabilization Agreement of the Sheet Metal Indus. Tr. Fund v. 5 Starr Serv. & Constr.*, LLC, No. 1:15-cv-403 LMB/MSN, 2015 WL 4139226, at *3 (E.D. Va. July 8, 2015).

        (ii) liquidated damages provided for under the plan in an amount not more than 20 percent of the amount determined by the court under subparagraph (A);

        (D) reasonable attorney's fees and costs of the action, to be paid by the defendant; and

        (E) other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

### 1. CBAs

Plaintiffs support their claims with an affidavit from Daniel Hagerman ("Hagerman Affidavit"), the Sheet Metal Workers' National Pension Fund's CBA/Compliance Manager. (ECF No. 10-1.) Mr. Hagerman's role involves monitoring and recovering employers' contributions and reports submitted to the Sheet Metal Workers Benefit Funds, including the Funds. (*Id.* ¶ 2.) The Hagerman Affidavit supports Plaintiffs' allegations that the Funds are benefit plans and trust funds under ERISA, that the Funds are based in Falls Church, VA, and that Plaintiffs may bring suit under 29 U.S.C. § 185(a). (*Id.* ¶ 3.) Attached to the Hagerman Affidavit are copies of the relevant CBAs with Broadway executed in 2001, 2007, 2011, 2014, 2015, 2020, 2021, and 2024, which collectively cover work through June 30, 2029[3] ("Local 105 CBAs"). (*Id.* ¶¶ 4-19; ECF No. 10-1, Exs. 1,[4] 2-9.)

---

[3] Broadway has eight separate CBAs with Local 105 that cover different periods. The first CBA covers the period from July 1, 2001, to June 3, 2007; the second from July 1, 2007, to June 30, 2011; the third from January 1, 2011 to June 30, 2014; the fourth from July 1, 2014, to June 30, 2015; the fifth from July 1, 2015 to June 30, 2020; the sixth from July 1, 2020, to June 30, 2021; the seventh from July 1, 2021, to June 30, 2024; and the eighth from July 1, 2024, to June 30, 2029. (ECF No. 10-1, Exs. 1, 2-9.)

[4] Exhibit 1 of the Hagerman Affidavit was substantially blank. Plaintiffs refiled Exhibit 1 as ECF No. 12.

Article VIII, Sections 15 and Addendum No. 2 of the 2020, 2021, 2024 Local 105 CBAs required Broadway to submit monthly remittance reports and fringe benefit contributions to Plaintiffs for all hours worked by its covered employees within Local 105's jurisdiction. (*Id.* ¶ 22.) Addendum No. 2 describes the payments owed to the Funds. (*Id.* ¶ 24.) Under the CBAs, Broadway was required to make all payments and to submit all remittance reports no later than the twentieth day after the end of each month following the month Broadway paid the employees. (*Id.*) When Broadway's contributions became delinquent, as explained by Exhibit 10 of the Hagerman Affidavit, the Trust Document required that Broadway pay Plaintiffs daily interest of .0233% per day; liquidated damages equal to the greater of $50 or 10% of the contributions due for each month Broadway failed to pay before Plaintiffs filed suit; liquidated damages equal to the greater of interest on the delinquent contributions at the above rate or 20% of the delinquent contributions at the time litigation is commenced; and attorneys' fees and costs incurred in pursuing the delinquent amounts. (*Id.* ¶ 25(a)-(d).)

Under Article V, Section 3 of the Trust Agreement and Section 5 of the Sheet Metal Workers' National Pension Fund's Procedures for the Collection of Contributions, the Funds may audit a contributing employer to make sure the employer's remittance reports and contributions are accurate. (ECF No. 1 at 6.) Section 5(F) also allows the Funds to collect attorneys' fees, audit charges, and other costs when employers refuse to permit an audit in whole or in part. (ECF No. 10 at 15; ECF No. 10-1, Ex. 11.)

### 2. Delinquent Contributions and Noncompliance

Plaintiffs allege that their records show Broadway failed to remit remittance reports and contributions to the Funds from December 2020 through December 2024 for four employees as required by the CBAs and paid its contributions late for other employees from June 2021 to July

8

2024. (ECF No. 10-1 ¶¶ 31, 32; ECF No. 10 at 6.) Therefore, Broadway is liable for the amounts owed under the last three CBAs as well as damages asserted by Plaintiffs. (*Id.* ¶¶ 32-34.)

Upon discovering the missing contributions, Plaintiffs allege that they attempted to audit Broadway to determine the accuracy of its reporting. (ECF No. 10 at 7.) The Funds' auditors sent Broadway a request to schedule an audit on September 20, 2024, and letters on January 31, May 21, and June 25, 2025, demanding payroll documents covering January 2019 to present. (*Id.*; ECF No. 10-1 ¶¶ 35, 36; ECF No. 1 at 7.) According to Plaintiffs, Broadway has not provided the requested documents and has refused to comply with the letters or respond to the Funds' follow-up communications. (*Id.*) Because participating employers' monthly contribution obligations are entirely self-reported in their remittance reports to the Funds, besides the audit, Plaintiffs have no other means to verify the accuracy of Broadway's reports and contributions. (ECF No. 10 at 5; ECF No. 1 at 6.)

### E. **Damages**

Having established Broadway's liability under ERISA and LMRA, the Court addresses damages.

#### 1. **Contributions, Interest, and Liquidated Damages**

According to the Hagerman Affidavit, between December 2020 and December 2024, Broadway failed to submit remittance reports and contributions to the Funds on time as required by the CBAs. (ECF No. 10-1 ¶¶ 31, 32.) The CBAs allow Plaintiffs to collect the following remedies for delinquent payments: (1) liquidated damages equal to the greater of $50 or 10% of the contributions due for each month of delinquent payments; (2) interest on the delinquent payments at a rate of 0.0233% per day; (3) liquidated damages equal to the greater of interest on

9

all delinquent contributions or 20% of the contributions unpaid; and (4) attorneys' fees and costs incurred based on the failure to pay. (*Id*. ¶ 25(a)-(d).)

The damages fall into two categories based on Broadway's distinct patterns of noncompliance. First, Broadway completely failed to remit contributions for four employees from June 2021 through July 2024. Second, Broadway made late payments for other employees from December 2020 through December 2024. For the first category, Plaintiffs seek contributions, interest, and liquidated damages as follows:

- Contributions of $79,216.68,
- Interest of $19,766.35, and
- Liquidated damages of $19,766.35.

For the second category, because the contributions were eventually paid, Plaintiffs seek only the following in interest and liquidated damages:

- Interest of $846.50 and
- Liquidated damages of $5,005.78

In total, Plaintiffs seek damages of $124,601.67 (ECF No. 10-1 at 8, 9, 583-86; ECF No. 1 at 10), and I recommend that the district judge award Plaintiffs this amount for contributions, interest, and liquidated damages.

2. **Attorneys' Fees and Costs**

Plaintiffs request reasonable attorneys' fees and costs in their complaint and in their Motion for Default Judgment. (ECF No. 1 at 7; ECF No. 9, at 3.) "Under the so-called 'American rule,' a prevailing party generally cannot recover attorneys' fees from the losing party." *Ulloa v. QSP, Inc.*, 271 Va. 72, 81 (2006) (citing *Lee v. Mulford*, 269 Va. 562, 565 (2005)). But the Supreme Court has "recognized departures from the American Rule only in

10

'specific and explicit provisions for the allowance of attorneys' fees under selected statutes.'" *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 412 U.S. 240, 260 (1975)). ERISA is such a statute, and it provides plaintiffs with the right to request and collect reasonable attorneys' fees and costs incurred in collecting unpaid sums due under ERISA. 29 U.S.C. § 1132 (g)(2)(D).[5]

In calculating attorneys' fees, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). The Fourth Circuit has identified twelve factors for determining the reasonable number of hours and rate:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) [the] attorneys' fees awards in similar cases.

*Id.* (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

---

[5] Plaintiffs would also be entitled to recover attorney's fees and costs under ERISA Section 502(g)(2)(D), which provides that a court must award reasonable fees and costs in an action brough to enforce Section 515. 29 U.S.C. § 1145. Section 515, in turn, requires employers to make contributions and comply with the terms of the collective bargaining agreement. Section 5(F) of the Collection Policy provides that employers are responsible for fees and costs associated with bringing a legal action for noncompliance with an audit. (ECF No. 10 at 15.) However, it "goes without saying that courts can and should preclude double recovery . . . ." *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980). Thus, Plaintiffs cannot recover the full attorney's fees and costs on both counts.

11

Applying the *Robinson* factors, I find the $3,096.50 in requested attorneys' fees and $808.15 in requested costs reasonable. The billing record with hours worked, descriptions of work done, and rates applied is attached to the affidavit of Diana M. Bardes. (ECF No. 10-2.) While no affidavit from local counsel accompanies the fee request, the three decisions from this Court involving similar ERISA matters provide sufficient guidance on prevailing rates in this district. (*Id.* Exs. 2-4.)

The case presented no novel legal issues (factor 2) but required skill in ERISA litigation (factor 3). Ms. Bardes, an eleventh-year attorney, at $300/hour, a sixth-year associate at $275/hour, and a paralegal at $165/hour (*see* ECF No. 10-2 Ex. 1) billed rates consistent with similar ERISA cases in this district (factors 5, 9, 12) (*see id*. Exs. 2-4). The total time spent—14.5 hours—is reasonable given the need to review multiple CBAs, prepare detailed damages calculations, and draft the complaint and default motion (factor 1). *See, e.g.*, *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Chaney Inc.*, No. 1:15CV1452 (GBL/JFA), 2016 WL 3552108, at *4 (E.D. Va. Apr. 22, 2016), *report and recommendation adopted sub nom. Trustees of the Plumbers v. Chaney Inc.*, No. 1:15-CV-1452, 2016 WL 3552239 (E.D. Va. June 23, 2016) (awarding fees of $2,365 for 12 hours of work on an ERISA matter); *Missouri v. Jenkins*, 491 U.S. 274, 288 (1989) (encouraging "the use of lower cost paralegals rather than attorneys wherever possible . . . [to] reduce[e] the spiraling cost of . . . litigation'"). The results obtained—over $124,000 in damages—justify the fee request (factor 8). The total costs associated with this matter are $808.15, made up of process server fees, postage, and the $405 filing fee. (*Id*. ¶ 6.)

Accordingly, I recommend that the district judge award Plaintiffs $3,904.65 in costs and attorneys' fees.

### 3. Injunctive Relief

Plaintiffs also request injunctive relief pursuant to 29 U.S.C. § 1132 (g)(2)(E), which allows a court to award the plan "such other legal or equitable relief as the court deems appropriate." Plaintiffs request an order requiring Broadway to provide payroll records, personnel records, general ledgers, and other documents[6] necessary to conduct a payroll review for the period of January 2019[7] to present. (ECF No. 1 at 9.) Plaintiffs claim that they require this relief to determine whether additional contributions are due. (*See* ECF No. 9 at 3.) Plaintiffs also ask this Court to retain jurisdiction until Broadway has produced the requested information. (ECF No. 9-1 at 2.)

Before granting injunctive relief, a court must balance the following factors: (1) the likelihood of success on the merits of plaintiff's claim (for a preliminary injunction), or the existence of actual success on the merits (for a permanent injunction); (2) the likelihood of irreparable injury to the plaintiff in the absence of an injunction; (3) the likelihood of harm to other interested persons if an injunction is issued; and (4) the public interest in granting versus denying the injunction. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).

Plaintiffs have shown actual success on the merits because this Court has found Defendant liable under the CBAs. *See supra* Section III.D. *See also Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Marquette Mech. Contractors, Inc.*, No. 110-cv-00150

---

[6] According to the Hagerman Affidavit, employers subject to the CBAs are required to make available, among others, "original time cards/sheets, payroll registers, individual earnings records, 941's, state U/C's, W-2's, W-3's and 1099's, cash disbursement journals, National Benefit Funds remittance reports/records, remittance reports for any other fringe benefit fund to which the Employer contributes, personnel records." (ECF No. 10-1 at 8.)

[7] On a single occasion, Plaintiffs request records beginning January 2017 (ECF No. 10 at 11), but on every other occasion, Plaintiffs request records beginning January 2019.

(LO/IDD), 2010 WL 11701299, at *4 (E.D. Va. Aug. 24, 2010), *report and recommendation adopted*, No. 1:10-cv-150, 2010 WL 11701300 (E.D. Va. Sept. 16, 2010).

Plaintiffs face irreparable harm without the requested audit documents. *See Nat'l Stabilization Agreement of the Sheet Metal Indus. Tr. Fund v. Indiana Panel & Glass Erectors, Inc.*, No. CIVA 1:08-cv-731, 2008 WL 4966896, at *4 (E.D. Va. Oct. 21, 2008) (finding defendant's failure to contribute evidence of continued irreparable injury warranting injunctive relief). Because Broadway self-reports its contribution obligations, Plaintiffs cannot verify the accuracy of Broadway's remittances or determine whether additional contributions are owed without access to Broadway's payroll records. (ECF No. 10-1 at 7.) Monetary damages cannot compensate Plaintiffs for their inability to fulfill their fiduciary duty to ensure all entitled contributions are collected, and Broadway's refusal to comply with multiple audit requests since September 2024 demonstrates that voluntary compliance will not occur, necessitating injunctive relief. (*Id*. at 9.)

The remaining factors also warrant injunctive relief. There is no likelihood of harm to other interested persons if Broadway must produce the records. The public has an interest in the records, because Broadway's continued failure to make contributions or provide the necessary payroll documents causes losses to Plaintiffs and to the Funds' beneficiaries. *See Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. B.O.C. Heating & Air Conditioning Co*., No. 1:09-cv-01127 (CMH/IDD), 2010 WL 2976504, at *4 (E.D. Va. May 11, 2010), *report and recommendation adopted sub nom. Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. B.O.C. Heating & Air Conditioning*, No. 1:09-cv-1127, 2010 WL 2976495 (E.D. Va. July 16, 2010).

Having shown all four factors warrant granting injunctive relief, I recommend that the district judge award Plaintiffs injunctive relief that requires Broadway to provide the requested records.

### IV.    Recommendation

I recommend that the district judge enter a default judgment for Plaintiffs and against Defendant Broadway in the total amount of $128,506.31. The number comprises $124,601.67 in damages and $3,904.65 in attorneys' fees and costs.

I also recommend that the district judge grant Plaintiffs the following injunctive relief against Defendant: an order requiring Defendant to provide payroll records, check registers, and general ledgers from January 2019 through the present. If Plaintiffs take further action to enforce and collect this judgment, they may apply to this Court or to the enforcing court for additional reasonable attorneys' fees and costs beyond those awarded here.

### V.    Notice

The Clerk will serve this Report and Recommendation on all parties through the Court's electronic filing system. A copy will also be mailed to Broadway at 1522 W. 135th Street, Gardena, CA 90249.

Objections to this Report and Recommendation must be filed within 14 days of service. Failure to file timely objections waives appellate review of both the substance of this Report and Recommendation and any judgment based on it. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985).

Entered this 21st day of January 2026.

_____
William B. Porter
United States Magistrate Judge

Alexandria, Virginia